## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Tauna Johnson, | : | |
| | : | |
| -and- | : | Civil Action No. 2:18-cv-1384 |
| | : | |
| Stacey White, | : | Judge |
| | : | |
| Individually and on behalf of | : | Magistrate Judge |
| other members of the general | : | |
| public similarly situated, | : | **JURY DEMAND ENDORSED HEREON** |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| Smyth Automotive, Inc. | : | |
| c/o Corporation Statutory Services, Inc. | : | |
| 255 E. Fifth Street, Ste. 2400 | : | |
| Cincinnati, Ohio 45202 | : | |
| | : | |
| Defendant. | : | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Tauna Johnson ("Plaintiff" or "Plaintiff Johnson") and Stacey White ("Plaintiff" or "Plaintiff White") bring this action individually and on behalf of all current and former employees (hereinafter "Plaintiffs and the Putative Class Members") who worked for Smyth Automotive, Inc. ("Smyth Automotive") as "independent contractors" and were paid hourly but no overtime from three years preceding the filing of the Original Complaint and through the final disposition of this matter, seeking all available relief, including compensation, liquidated damages, attorneys' fees, and costs, pursuant the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., pursuant to Ohio's Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. §§ 4111.01, 4111.03 and 4111.10, the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15 (the

OMFWSA and the OPPA will be referred to collectively as the "Ohio Acts").

Plaintiffs' FLSA claim is asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), while their Ohio Acts claims are asserted as class actions under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 23. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## I.    OVERVIEW

1.    This lawsuit includes a collective action pursuant to the FLSA, 29 U.S.C. §§ 201 *et. seq*., and class actions pursuant to the Ohio Acts and FED. R. CIV. P. 23, to recover overtime wages.

2.    Plaintiffs and the Putative Class Members are those similarly situated persons who worked for Smyth Automotive, Inc. ("Smyth Automotive") as "independent contractors" since three years preceding the filing of this Complaint and through the final disposition of this matter, and were paid hourly for all hours worked but did not receive overtime for all hours worked over forty (40) in each workweek.

3.    Smyth Automotive improperly classified Plaintiffs and the Putative Class Members as independent contractors when they should have been properly classified as employees of Smyth Automotive.

4.    Smyth Automotive improperly classified Plaintiffs and the Putative Class Members as independent contractors by contracting with a third party administrator and/or referral agency, Subcontracting Concepts LLC ("SCI"), to provide Smyth Automotive with workers.

5.     Despite Smyth Automotive's misclassification of Plaintiffs and the Putative Class Members as independent contractors and Smyth Automotive's use of SCI to provide workers such as the Plaintiffs and the Putative Class Members, Plaintiffs and the Putative Class Members should have been classified by Smyth Automotive as direct employees of Smyth Automotive and paid as employees, not independent contractors.

6.     Plaintiffs and the Putative Class Members routinely work (and worked) in excess of forty (40) hours per workweek, Plaintiffs and the Putative Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

7.     The decision by Smyth Automotive not to classify Plaintiffs and the Putative Class Members as employees and to pay them overtime compensation was neither reasonable nor in good faith.

8.     Smyth Automotive knowingly and deliberately failed to compensate Plaintiffs and the Putative Class Members overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek due to their misclassification.

9.     Plaintiffs and the Putative Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or the Ohio Acts.

10.     Plaintiffs and the Putative Class Members therefore seek to recover all unpaid overtime and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid overtime and other damages owed under the Ohio Acts as class actions pursuant to FED. R. CIV. P. 23.

11.     Plaintiffs pray that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

12.     Plaintiffs also pray that the Rule 23 classes are certified as defined herein, and the Plaintiffs be designated as Class Representatives.

## II.     THE PARTIES

13.     Plaintiff Tauna Johnson ("Plaintiff Johnson") worked for Smyth Automotive within the meaning of the FLSA and the Ohio Acts within this judicial district and within the relevant three-year period. Plaintiff Johnson did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

14.     Plaintiff Stacey White ("Plaintiff White") worked for Smyth Automotive within the meaning of the FLSA and the Ohio Acts within this judicial district and within the relevant three-year period. Plaintiff White did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[2]

15.     The Putative Class Members include those current and former employees who worked for Smyth Automotive since three years preceding the filing of this Complaint and have been subjected to the same illegal pay system under which Plaintiffs Johnson and White worked and were paid. The Putative Class Members include: the FLSA Collective Members, as defined below, who worked in various locations throughout Ohio.

16.     Smyth Automotive, Inc.    ("Smyth Automotive") is a domestic for-profit corporation, doing business in Ohio, and may be served through its registered agent for service

---

[1] The written consent of Plaintiff Johnson is attached hereto as Exhibit "A."
[2] The written consent of Plaintiff White is also attached hereto as Exhibit "A."

of process: Corporate Statutory Services, Inc., 255 E. Fifth Street, Ste. 2400, Cincinnati, Ohio 45202.

### III. JURISDICTION & VENUE

17.     This Court has subject matter jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201 *et. seq.*

18.     This Court has supplemental jurisdiction over the Ohio Acts claims pursuant to 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over Smyth Automotive because the cause of action arose within this District as a result of Smyth Automotive's conduct within this District.

20.     Venue is proper in the Southern District of Ohio because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

21.     Specifically, Smyth Automotive has maintained a working presence throughout this District and Division.

22.     Venue is proper in this this District pursuant to 28 U.S.C. § 1391.

### IV. ADDITIONAL FACTS

23.     **Smyth Automotive** claims to be a "privately-held automotive aftermarket company, owned and operated by the Smyth family" that "has grown and expanded into 24 locations including 18 retail stores, 5 warehouse distributors, a battery division, 2 Machine Shops, 1 Automotive Repair Shop, and 8 PPG and Pro-Spray paint centers throughout Greater Cincinnati, Kentucky, Dayton, and Columbus.[3]

---

[3] http://smythautomotive.com/?page_id=93

24.    Smyth Automotive currently has locations and operations throughout Ohio and Kentucky.[4]

25.    To provide their services, Smyth Automotive employed numerous workers—including the individuals that make up the putative or potential class, but employed such workers as "independent contractors" through a third party administrator and/or referral agency, SCI, to provide Smyth Automotive with workers.

26.    Despite Smyth Automotive's use of SCI to provide it with delivery drivers such as Plaintiffs and the Putative Class Members, and Smyth Automotive's misclassification of them as independent contractors, Plaintiffs and the Putative Class Members should have been classified by Smyth Automotive as employees and paid accordingly.

27.    Specifically, Smyth Automotive employed numerous workers such as Plaintiffs and the Putative Class Members as delivery drivers for various Smyth Automotive locations throughout Ohio.

***Plaintiff Johnson***

28.    Plaintiff Johnson worked for Smyth Automotive as a delivery driver from approximately July 2018 through October 2018.

29.    Plaintiff Johnson began working for Smyth Automotive at its Hilliard, Ohio location and was thereafter transferred to Smyth Automotive's location on Brice Road in Columbus, Ohio.

30.    During this time, Plaintiff Johnson exclusively worked for Smyth Automotive as a delivery driver.

31.    Plaintiff Johnson's normal working hours for Smyth Automotive were 8:00 am to 7:00 pm Monday through Friday, and 8:00 am to 5:00 pm Saturday.

32.     Upon her arrival and departure, Plaintiff Johnson clocked in and out each day at Smyth Automotive and exclusively delivered for Smyth Automotive throughout each workweek.

33.     Plaintiff Johnson was paid $10.78 per hour worked for Smyth Automotive by SCI as a result of Smyth Automotive's misclassification of Plaintiff Johnson as an independent contractor and/or its use of SCI as a third party administrator and/or referral agency to misclassify Plaintiffs and the Putative Class Members as independent contractor delivery drivers for Smyth Automotive.

34.     Although it is well-known that workers like Plaintiffs and the Putative Class Members are not exempt from overtime, Smyth Automotive did not pay Plaintiff Johnson and the Putative Class Members the additional overtime premium required by the FLSA for hours worked in excess of forty (40) in a workweek.

### Plaintiff White

35.     Plaintiff White worked for Smyth Automotive as a delivery driver from approximately July 2018 through October 2018.

36.     Plaintiff White began working for Smyth Automotive at its Westerville, Ohio location and was thereafter transferred to Smyth Automotive's location on Brice Road in Columbus, Ohio.

37.     During this time, Plaintiff White exclusively worked for Smyth Automotive as a delivery driver.

38.     Plaintiff White's normal working hours for Smyth Automotive were 8:00 am to 7:00 pm Monday through Friday, and 8:00 am to 5:00 pm Saturday.

39.     Upon her arrival and departure, Plaintiff White clocked in and out each day at Smyth Automotive and exclusively delivered for Smyth Automotive throughout each workweek.

40.     Plaintiff White was paid $10.78 per hour worked for Smyth Automotive by SCI as a result of Smyth Automotive's misclassification of Plaintiff White as an independent contractor and/or its use of SCI as a third party administrator and/or referral agency to misclassify Plaintiffs and the Putative Class Members as independent contractor delivery drivers for Smyth Automotive.

41.     Although it is well-known that workers like Plaintiffs and the Putative Class Members are not exempt from overtime, Smyth Automotive did not pay Plaintiff White and the Putative Class Members the additional overtime premium required by the FLSA for hours worked in excess of forty (40) in a workweek.

42.     Plaintiff Johnson and the Putative Class Members' primary job duties included: traveling to and from various automotive parts shops, dropping off Smyth Automotive bank deposits, labeling Smyth Automotive core parts, putting away automotive parts and supplies in designated areas of Smyth Automotive warehouses as directed by Smyth Automotive, delivering cleaning supplies and toiletries to Smyth Automotive warehouses, picking up and delivering/exchanging Smyth Automotive parts and supplies to other Smyth Automotive locations throughout Ohio, and filling out Smyth Automotive daily driver sheets.

43.     Plaintiff White and the Putative Class Members' primary job duties included: traveling to and from various automotive parts shops, dropping off Smyth Automotive bank deposits, labeling Smyth Automotive core parts, driving a dedicated looped route to Smyth Automotive warehouses to deliver parts, delivering cleaning supplies and toiletries to Smyth Automotive warehouses, picking up and delivering/exchanging Smyth Automotive parts and supplies to other Smyth Automotive locations throughout Ohio, and filling out Smyth Automotive daily driver sheets.

44. Upon information and belief, Plaintiffs and the Putative Class Members conducted their day-to-day activities within mandatory and designed parameters and in accordance with pre-determined operational plans created by Smyth Automotive and/or its clients.

45. Upon further information and belief, Plaintiffs and the Putative Class Members' daily and weekly activities were routine and largely governed by standardized plans, and procedures created by Smyth Automotive and/or its clients.

46. Virtually every job function and delivery was predetermined by Smyth Automotive and/or its clients.

47. Plaintiffs and the Putative Class Members were prohibited from varying their job duties outside of the predetermined parameters.

48. Moreover, Plaintiffs and the Putative Class Members' job functions were primarily routine and manual labor in nature, requiring little to no official training, much less a college education or other advanced degree.

49. Plaintiffs and the Putative Class Members' duties did not (and currently do not) include managerial responsibilities or the exercise of independent discretion or judgment.

50. Plaintiffs and the Putative Class Members did not (and currently do not) have the authority to hire or fire other employees, and they were not (and currently are not) responsible for making hiring or firing recommendations.

51. Moreover, Plaintiffs and the Putative Class Members did not (and currently do not) supervise two or more employees.

52.     Plaintiffs and the Putative Class Members' duties did not (and currently do not) concern work directly related to the management or general business operations of Smyth Automotive or its customers.

53.     Smyth Automotive determined the hours Plaintiffs and the Putative Class Members worked.

54.     Smyth Automotive set Plaintiffs and the Putative Class Members' pay and controlled the number of hours they worked.

55.     Smyth Automotive set all employment-related policies applicable to Plaintiffs and the Putative Class Members.

56.     Smyth Automotive maintained control over pricing and marketing.

57.     Smyth Automotive owned and/or controlled the equipment and supplies that Plaintiffs and the Putative Class Members used to perform their work.

58.     Smyth Automotive required Plaintiffs and the Putative Class Members to clock in and out at Smyth Automotive at the beginning and ends of their work shifts and paid them by the hour for the work they performed for Smyth Automotive.

59.     Smyth Automotive had the power to hire and fire Plaintiffs and the Putative Class Members.

60.     Smyth Automotive demanded Plaintiffs and the Putative Class Members wear Smyth Automotive clothing while working for Smyth Automotive.

61.     Smyth Automotive made all personnel and payroll decisions with respect to Plaintiffs and the Putative Class Members, including but not limited to, the decision to pay Plaintiffs and the Putative Class Members an hourly wage with no overtime pay.

62.     Plaintiffs and the Putative Class Members did not employ their own workers.

63.     Plaintiffs and the Putative Class Members worked continuously for Smyth Automotive on a permanent full-time basis.

64.     Smyth Automotive, instead of Plaintiffs and the Putative Class Members, made the large capital investments in vehicles, buildings, equipment, tools, and supplies. Moreover, Smyth Automotive paid operating expenses like rent, payroll, marketing, insurance, and bills.

65.     Plaintiffs and the Putative Class Members relied on Smyth Automotive for their work. Plaintiffs and the Putative Class Members did not market any business or services of their own.

66.      Instead, Plaintiffs and the Putative Class Members worked the hours assigned by Smyth Automotive, performed duties assigned by Smyth Automotive, worked on projects assigned by Smyth Automotive, and worked for the benefit of Smyth Automotive field and its customers.

67.     Smyth Automotive paid Plaintiffs and the Putative Class Members on a weekly basis. Plaintiffs and the Putative Class Members did not earn a profit based on any business investment of their own. Rather, Plaintiffs and the Putative Class Members' only earning opportunity was based on the **number of hours** they were allowed to work, which was controlled by Smyth Automotive and/or its customers.

68.     Smyth Automotive improperly classified Plaintiffs and the Putative Class Members as independent contractors. The classification was improper because Plaintiffs and the Putative Class Members were not in business for themselves. Instead, they were economically dependent upon Smyth Automotive for their work.

69.     Plaintiffs and the Putative Class Members' duties did not (and currently do not) include managerial responsibilities or the exercise of independent discretion or judgment.

70. The FLSA and the Ohio Acts mandate that overtime be paid at one and one-half times an employee's regular rate of pay.

71. Under the Ohio Acts overtime shall be paid in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the FLSA. O.R.C. § 4111.03(A).

72. Smyth Automotive denied Plaintiffs and the Putative Class Members overtime pay as a result of a widely applicable, illegal pay practice. Plaintiffs and the Putative Class Members regularly worked in excess of forty (40) hours per week but never received overtime compensation.

73. Smyth Automotive applied this pay practice despite clear and controlling law that states that the routine delivery duties which were performed by Plaintiffs exclusively for Smyth Automotive's benefit and the Putative Class Members consisted of ***non-exempt*** work.

74. Accordingly, Smyth Automotive's pay policies and practices blatantly violated (and continue to violate) the FLSA and the Ohio Acts.

## V. CAUSES OF ACTION

### COUNT ONE
**(Collective Action Alleging FLSA Violations)**

**A. FLSA COVERAGE**

75. All previous paragraphs are incorporated as though fully set forth herein.

76. The FLSA Collective is defined as:

**ALL CURRENT AND FORMER EMPLOYEES WHO WORKED AS A DELIVERY DRIVER FOR SMYTH AUTOMOTIVE, INC. AS AN "INDEPENDENT CONTRACTOR" THROUGH SCI OR OTHER THIRD PARTY, AT ANY TIME FROM THREE YEARS PRECEDING THE FILING OF THIS CASE THROUGH THE FINAL DISPOSITION OF THIS CASE, AND WERE PAID HOURLY BUT DID NOT RECEIVE OVERTIME FOR HOURS WORKED OVER FORTY IN ANY WORKWEEK ("FLSA Collective" or "FLSA Collective Members").**

77.     At all times hereinafter mentioned, Smyth Automotive has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

78.     At all times hereinafter mentioned, Smyth Automotive has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

79.     At all times hereinafter mentioned, Smyth Automotive has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

80.     During the respective periods of Plaintiffs and the FLSA Collective Members' employment by Smyth Automotive, these individuals provided services for Smyth Automotive that involved interstate commerce for purposes of the FLSA.

81.     In performing the operations hereinabove described, Plaintiffs and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

82.     Specifically, Plaintiffs and the FLSA Collective Members are (or were) ***non-exempt*** employees who worked for Smyth Automotive and were engaged in delivery driving services that were directly essential to the production and/or transportation of goods for Smyth Automotive. 29 U.S.C. § 203(j).

83. At all times hereinafter mentioned, Plaintiffs and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

84. In violating the FLSA, Smyth Automotive acted willfully, without a good faith basis and with reckless disregard of applicable federal law.

85. The proposed collective of similarly situated employees, i.e. putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined above.

86. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Smyth Automotive.

**B. FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FLSA**

87. All previous paragraphs are incorporated as though fully set forth herein.

88. Smyth Automotive violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates.

89. Plaintiffs and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of Smyth Automotive's acts or omissions as described herein; though Smyth Automotive is in possession and control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages.

90. Moreover, Smyth Automotive knowingly, willfully and in reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees overtime compensation.

91.     Smyth Automotive knew or should have known its pay practices were in violation of the FLSA.

92.     Smyth Automotive is a sophisticated party and employer, and therefore knew (or should have known) its policies were in violation of the FLSA.

93.     Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Smyth Automotive to pay overtime in accordance with the law.

94.     The decision and practice by Smyth Automotive to not pay overtime was neither reasonable nor in good faith.

95.     Accordingly, Plaintiffs and the Putative Class Members are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

**C.      FLSA COLLECTIVE ACTION ALLEGATIONS**

96.     All previous paragraphs are incorporated as though fully set forth herein.

97.     Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all those who are (or were) similarly situated to Plaintiffs.

98.     Other similarly situated employees have been victimized by Smyth Automotive's patterns, practices, and policies, which are in willful violation of the FLSA.

99.     The FLSA Collective Members are defined above.

100.    Smyth Automotive's failure to pay any overtime compensation results from generally applicable policies and practices, and does not depend on the personal circumstances of the individual FLSA Collective Members.

101. Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

102. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

103. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

104. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts. Indeed, the FLSA Collective Members are workers entitled to overtime after forty (40) hours in a week.

105. Smyth Automotive employed a substantial number of similarly situated workers since three years preceding the filing of this Complaint. Upon information and belief, these workers are geographically dispersed, residing and working in locations across Ohio.

106. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and Smyth Automotive will retain the proceeds of its rampant violations.

107. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

108. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined above and notice should be promptly sent.

## COUNT TWO
### (Class Action Alleging Violations of the Ohio Acts)

**A. OHIO ACTS COVERAGE**

109.    All previous paragraphs are incorporated as though fully set forth herein.

110.    The Ohio Acts Class is defined as:

**ALL CURRENT AND FORMER OHIO EMPLOYEES WHO WORKED AS A DELIVERY DRIVER FOR SMYTH AUTOMOTIVE, INC. AS AN "INDEPENDENT CONTRACTOR" THROUGH SCI OR OTHER THIRD PARTY, AT ANY TIME FROM THREE YEARS PRECEDING THE FILING OF THIS CASE THROUGH THE FINAL DISPOSITION OF THIS CASE, AND WERE PAID HOURLY BUT DID NOT RECEIVE OVERTIME FOR HOURS WORKED OVER FORTY IN ANY WORKWEEK ("Ohio Acts Class" or "Ohio Acts Class Members").**

111.    At all times hereinafter mentioned, Smyth Automotive has been an employer within the meaning of the OMFWSA, O.R.C. § 4111.03(D)(2).

112.    At all times hereinafter mentioned, Plaintiffs and the Ohio Acts Class members have been employees within the meaning of the OMFWSA, O.R.C. § 4111.03(D)(3).

113.    Plaintiffs and the Ohio Acts Class Members were or have been employed by Smyth Automotive since three years preceding the filing of this Complaint, and have been covered employees entitled to the protections of the Ohio Acts and were not exempt from the protections of the Ohio Acts.

114.    The employer, Smyth Automotive, is not exempt from paying overtime benefits under the Ohio Acts.

**B. FAILURE TO PAY WAGES IN ACCORDANCE WITH THE OHIO ACTS**

115.    All previous paragraphs are incorporated as though fully set forth herein.

116.    The OMFWSA requires that employees, including Plaintiffs and the Ohio Acts Class Members receive "time and one-half" overtime premium compensation for hours worked over forty (40) per week.

117.    The OPPA requires that Smyth Automotive pay Plaintiffs and the Ohio Acts Class Members all wages, including unpaid overtime, on or before the first day of each month, for wages earned by her during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by her during the last half of the preceding calendar month.

118.    Plaintiffs and the Ohio Acts Class Members were or have been employed by Smyth Automotive since three years preceding the filing of this Complaint, and have been covered employees entitled to the protections of the Ohio Acts.

119.    Smyth Automotive is an employer covered by the requirements set forth in the Ohio Acts.

120.    Plaintiffs and other Ohio Acts Class Members have not been exempt from receiving overtime benefits under the Ohio Acts.

121.    Plaintiffs and the Ohio Acts Class Members worked more than forty (40) hours in workweeks during times relevant to this case, however, Smyth Automotive violated the Ohio Acts by failing to pay Plaintiffs and other Ohio Acts Class Members any overtime premium for hours worked over 40 per week.

122.    Plaintiffs and the Ohio Acts Class Members were not paid all wages, including overtime wages at one and one-half times their regular rates within thirty (30) days of performing the work.

123. The wages of Plaintiffs and the Ohio Acts Class Members remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

124. Plaintiffs and the Ohio Acts Class Members have suffered damages and continue to suffer damages as a result of Smyth Automotive's acts or omissions as described herein; though Smyth Automotive is in possession and control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages

125. In violating the Ohio Acts, Smyth Automotive acted willfully, without a good faith basis, and with reckless disregard of applicable Ohio law.

126. The proposed class of employees, i.e. putative class members sought to be certified pursuant to the Ohio Acts, is defined above.

127. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Smyth Automotive.

C.    **OHIO ACTS CLASS ALLEGATIONS**

128. All previous paragraphs are incorporated as though fully set forth herein.

129. Plaintiffs bring their Ohio Acts claims as class actions pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Smyth Automotive to work in Ohio since three years preceding the filing of this Complaint.

130. Class action treatment of Plaintiffs' Ohio Acts claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

131. The number of Ohio Acts Members is so numerous that joinder of all class members is impracticable.

132.    Plaintiffs are members of the Ohio Acts Class, their claims are typical of the claims of other Ohio Acts Class Members, and they have no interests that are antagonistic to or in conflict with the interests of other class members.

133.    Plaintiffs and their counsel will fairly and adequately represent the Ohio Acts Class Members and their interests.

134.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

135.    Accordingly, the Ohio Acts Class should be certified as defined above.

## VI.    RELIEF SOUGHT

Plaintiffs respectfully pray for judgment against Smyth Automotive as follows:

a.    For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective and requiring Smyth Automotive to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

b.    For an Order certifying the Ohio Acts Class and designating Plaintiffs as Representatives of the Ohio Acts Class;

c.    For an Order approving the form and content of a notice to be sent to all potential FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

d.    For an Order awarding Plaintiffs (and those FLSA Collective Members who have joined in the suit) back wages that have been improperly withheld;

e.     For an Order pursuant to Section 16(b) of the FLSA finding Smyth Automotive liable for unpaid back wages due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), and for attorneys' fees and costs;

f.     For an Order pursuant to the Ohio Acts awarding Plaintiffs and the Ohio Acts Class Members unpaid overtime and other damages allowed by law;

g.     For an Order awarding the costs and expenses of this action;

h.     For an Order awarding attorneys' fees;

i.     For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

j.     For an Order awarding Plaintiffs service awards as permitted by law;

k.     For an Order compelling the accounting of the books and records of Smyth Automotive, at Smyth Automotive's own expense;

l.     For an Order against Defendant for liquidated damages pursuant to the OPPA in an amount equal to six percent (6%) of all unpaid overtime compensation owed to Plaintiffs and the Ohio Acts Class Members during the applicable statutory period; and

m.     For an Order providing for injunctive relief prohibiting Smyth Automotive from engaging in future violations of the FLSA, the Ohio Acts, and requiring Smyth Automotive to comply with such laws going forward; and

n.     For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
*Trial Counsel*
**COFFMAN LEGAL, LLC**
1550 Old Henderson Rd.
Suite 126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

*/s/ Peter Contreras*
Peter Contreras (0087530)
**CONTRERAS LAW, LLC**
PO Box 215
Amlin, Ohio 43002
Phone: 614-787-4878
Fax: 614-923-7369
Email: peter.contreras@contrerasfirm.com

*Attorneys for Named Plaintiffs and those similarly situated*

## JURY DEMAND

Plaintiffs request a trial by a jury of twelve (12) persons.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman