IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TAUNA JOHNSON & STACEY WHITE, *et al.*, | : : : | Case No. 2:18-cv-1384 |
| Plaintiffs, | : | |
| v. | : : | JUDGE ALGENON L. MARBLEY |
| SMYTH AUTOMOTIVE, INC., | : : | Magistrate Judge Chelsey M. Vascura |
| Defendant. | : | |

## **OPINION & ORDER**

This matter comes before the Court on Defendant's Motion to Compel Arbitration. (ECF No. 8). Plaintiffs have filed a response (ECF No. 13) and Defendants filed a reply (ECF No. 16). For the reasons below, Defendant's Motion is **GRANTED**. The parties shall arbitrate their claims and this case is **STAYED** pending arbitration.

### I.  Background

Plaintiffs are Ohio residents who worked for Defendant from approximately July 2018 to October 2018. (ECF No. 1 at ¶¶28, 35). Defendant is an Ohio corporation that operates, *inter alia*, retail stores, warehouses, paint centers, and an auto repair shop in Ohio and Kentucky. (*Id.* at ¶23). Plaintiffs allege Defendant misclassified them as independent contractors when they were in fact employees. (*Id.* at ¶¶ 33, 40). Plaintiffs also allege they were not paid overtime for hours worked in excess of forty hours per work week. (*Id.* at ¶¶ 13, 14). Plaintiffs brought this suit alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; Ohio's Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. §§ 4111.01, 4111.03, and 4111.10; and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15. Plaintiffs' complaint is

made on behalf of a putative collective action, under §16(b) of the FLSA, 29 U.S.C. § 216(b), and a putative class action, under Rule 23 of the Federal Rules of Civil Procedure.

Defendants have filed a Motion to Compel Arbitration. In their Motion, Defendants explain that on July 5, 2018, Plaintiffs signed contracts with a third-party, Subcontracting Concepts, LLC ("SCI"). (ECF No. 8 at 2). SCI is a "third-party administrator for independent owner operators in the courier and logistic business, including Plaintiffs." (*Id*. at 3). The arrangement is that Defendant was a "customer" or "client" of SCI (ECF No. 8 at 3) and SCI "contracts with independent owner operators, as it did with Plaintiffs, to provide additional services and products…" (*Id*.).

In the contract Plaintiffs concluded with SCI, there is an arbitration agreement that reads, in part,

> [i]n the event of any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, or service arrangement between [Plaintiffs] and SCI's clients or any permissible statutory disputes, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, the parties shall consult and negotiate with one another in good faith, in an attempt to reach a just and equitable solution, satisfactory to both parties. If resolution of the dispute, claim, question, or disagreement is not reached within a period of 60 days, then upon notice by either party, disputes that are within the jurisdictional maximum for small claims will be settled in small claims court where the Owner/Operator resides. All other disputes, claims, questions, or differences beyond the jurisdictional maximum for small claims courts within the locality of the Owner/Operator's residence shall be finally settled by arbitration in accordance with the policies of the Federal Arbitration Act and New York State's Arbitration provisions. (ECF No. 8, Ex. 1 at ¶26).

The arbitration provision also includes a class waiver. (*Id*.).

Defendants argue that this arbitration provision is binding on Plaintiffs and so their case in this Court must be dismissed. Plaintiffs argue that the contracts were signed with SCI, not with Defendants, and so Defendants cannot enforce the agreements against Plaintiffs. This Court has jurisdiction pursuant to 28 U.S.C § 1391, and this Motion is ripe for review.

2

## II. Law & Analysis

Arbitration "is a matter of contract." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Under the Federal Arbitration Act ("FAA"), arbitration contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012). If a party who signed an arbitration contract fails or refuses to arbitrate, the aggrieved party may petition the court for an order directing the parties to proceed in arbitration in accordance with the terms of an arbitration agreement. 9 U.S.C. § 4 (2012). The Court must then "determine whether the parties agreed to arbitrate the dispute at issue." *Ackison Surveying, LLC v. Focus Fiber Sols., LLC*, 2016 WL 4208145, at *1 (S.D. Ohio 2016) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* at *1. *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014). Finally, "state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004).

A threshold issue is whether Defendant, as a non-party to the contracts Plaintiffs signed with SCI, can invoke the arbitration clause therein to compel arbitration under §§ 3 & 4 of the FAA. The Supreme Court has held that "a litigant who was not a party to the relevant arbitration agreement may invoke § 3 if the relevant state contract law allows him to enforce the

3

agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). The agreements at issue specify that the arbitration shall be done "in accordance with the policies of the Federal Arbitration Act and New York State's Arbitration provisions." (ECF No. 8, Ex. 1 at ¶ 26). Defendant accordingly asserts that New York law applies, while Plaintiffs argue that "[a]lthough a choice of law provision should generally be applied under Ohio law," in this instance, Ohio law should apply because the parties and the dispute lack a substantive connection to New York. (ECF No. 13 at 6).

In this instance, this Court need not choose between Ohio and New York law because the same outcome results: both states have said that non-signatories may compel a signatory to abide by an arbitration agreement. *See Merrill Lunch Intern. Finance, Inc. v. Donaldson*, 27 Misc. 3d. 391, 895 N.Y.S. 698, 702-03 (N.Y. Sup. Ct. 2010) (finding that "[a] non-signatory can be compelled to arbitrate in certain circumstances," and that "[o]rdinary principles of contract and agency determine which parties are bound by an agreement to arbitrate") (internal citations omitted); *Tolbert v. Coast to Coast Dealer Services, Inc.*, 789 F. Supp. 2d. 811, 817 (N.D. Ohio) (concluding that, under Ohio law, there are "some instances…when an arbitration agreement may be enforced against a non-signatory party" and that "ordinary principles of contract law are used to determine if a non-signatory party is to be bound by the contract and a party may be bound by an agreement to arbitrate even in the absence of a signature.") (internal citations and alteration omitted).

Calling this process "alternative estoppel," New York courts focus on two factors when asked to compel arbitration: "whether (1) the signatory's claims arise under the subject matter of the underlying agreement, and (2) whether there is a close relationship between the signatory and the non-signatory party." *Moss v. BMO Harris Bank, N.A.*, 2014 WL 2565824 at *4 (E.D.N.Y.

2014) (internal citations and quotation marks omitted). Ohio courts perform a similar analysis for alternative estoppel when a willing non-signatory seeks to compel arbitration with a signatory who is unwilling to arbitrate. In such a case, "a signatory can be compelled to arbitrate at the nonsignatory's insistence because of the close relationship between the entities involved…and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations." *Reilly v. Meffe*, 6 F. Supp. 3d 760, 777-78 (S.D. Ohio 2014) (quoting *Thompson-CSF v. Am. Arbitration Ass'n,* 64 F.3d 773, 779 (2d Cir. 1995) (internal quotation marks omitted). This conclusion makes logical sense, because if a party "can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified." *Arnold v. Arnold Corp.-Printed Commc'ns For Bus.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (alteration in original).

The arbitration agreement at issue here satisfies both of these elements. The agreement begins by defining the relevant terms and parties: "owner/operator" refers to those who "are in the business of providing any delivery services for Logistics Brokers and receivers of deliveries." (ECF No. 8, Ex. 1 at 4). Plaintiffs Johnson and Wood are each defined as an "owner/operator" by the agreement. The agreement also defines a "Logistics Broker," as "businesses that market, sell, and provide logistical support for the delivery of tangible items." (*Id*.). According to the definitions provision, "Delivery Customers" are "the receivers of any tangible items by an Owner/Operator." Finally, the agreement defines "Third Party Administrator or TPA" as referring to a "business that procures, qualifies, and supports Owner/Operators." (*Id*.).

Plaintiffs signed these agreements with SCI to become owner/operators and, by the terms of the agreement, are independent contractors. Plaintiffs allege an employment relationship with

5

Smyth, but this is foreclosed by the structure of the contract, which explicitly envisions that SCI will create these arrangements with TPAs or Logistics Brokers. In addition, the Plaintiffs signed these agreements on July 5, 2018, and the Complaint alleges they began working for Smyth in July 2018, which indicates to this Court a degree of foreseeability and intent-to-benefit Smyth which supports the conclusion that the parties are closely related. The agreement specifies that Plaintiffs are independent contractors who have waived their right to represent a collective action, so the issues raised in the Complaint are precisely covered by the terms of the contract. (ECF No. 8, Ex. 1 at ¶¶6, 26).

As a result, non-signatory Defendant Smyth may compel Plaintiffs to arbitrate their dispute.

### III. Conclusion

In the absence of evidence that goes to the validity of the contract itself, this Court finds these contracts – with their arbitration provisions – to be enforceable against Defendant Smyth Automotive. A trial court has the inherent power to manage its docket, which includes the power to either stay or dismiss a case in which it orders arbitration. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 19-20 (1983). Accordingly, this Court hereby **STAYS** the proceedings in this case pending arbitration.

**IT IS SO ORDERED.**

                                              s/Algenon L. Marbley
                                              **ALGENON L. MARBLEY**
                                              **UNITED STATES DISTRICT JUDGE**

**DATED: May 24, 2019**